**WEINTRAUB & MARONE, LLC**
By:    Lisa R. Marone, Esquire / 200305
801 N. Kings Highway
Cherry Hill, NJ 08034
856-406-1990
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMIE HENSLEY,<br><br>          Plaintiff,<br><br>     V.<br><br>BUCKS COUNTY CORRECTIONAL FACILITY, a/k/a BUCKS COUNTY and/or BUCKS COUNTY DEPARTMENT OF CORRECTIONS, WILLIAM F. PLANTIER, TERRANCE P. MOORE, SGT. GREGORY VINGLESS, OFFICER POLOMOLUS, OFFICER T. DAVIS, OFFICER WILLIS, OFFICER GILL, OFFICER BARATS, LILLIAN BUDD, FRANK BOCHENEK, CAPTAIN "J", OFFICER SANTAGO, CAPTAIN LANDIS, OFFICER DIPASQUO, and JOHN DOES 1-50, j/s/a<br>          Defendants. | CIVIL ACTION<br><br>No.: 15-6098<br><br><br><br>**AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff, Jamie ("Jayden") Hensley, by way of complaint against the Defendants hereby states as follows:

## INTRODUCTION

1.    This is an action brought by Plaintiff, Jamie ("Jayden") Hensley against Bucks County Correctional Facility, a/k/a Bucks County and/or Bucks County Department Of Corrections, William F. Plantier, Terrance P. Moore, Sgt. Gregory Vingless, Officer Polomolus, Officer T. Davis, Officer Willis, Officer Gill, Officer Barats, Lillian Budd, Frank Bochenek, Caption "J", Officer Santago, Captain Landis, Officer DiPasquo, and John Does 1-50, j/s/a for claims arising under 42 U.S.C. §§ 1983, 1985 and 1988 arising

out of, *inter alia*: (1) Defendants' failure and refusal to provide medical care and treatment, which constitutes deliberate indifference to the serious medical conditions and needs of Plaintiff, Jamie ("Jayden") Hensley; (2) Defendants' disparate treatment of Plaintiff, Jamie ("Jayden") Hensley, for what they perceived to be a failure by Plaintiff, Jamie ("Jayden") Hensley to conform to gender norms; (3) Defendants' actions in preventing Plaintiff, Jamie ("Jayden") Hensley, access to the Courts; and (4) Defendants' retaliation against Plaintiff, Jamie ("Jayden") Hensley, because he engaged in protected conduct, all of which are in violation of the First, Eighth and/or Fourteenth Amendments of the United States Constitution and are violations of 42 U.S.C. §§ 1983, 1985 and/or 1988.

## JURISDICTION AND VENUE

2. This action arises under the Constitution of the United States of America, particularly, the First, Eighth and Fourteenth Amendments, and under the laws of the United States, particularly, the Civil Rights Act, 42 U.S.C. §§ 1983, 1985, and 1988.

3. The jurisdiction and venue of this Court is evoked under the provisions of Title 28 of the United States Code, Sections 1331, 1343, and 1391.

4. Venue of this suit is proper in the Commonwealth of Pennsylvania as the cause of action arose in the Commonwealth of Pennsylvania and all parties reside in the Commonwealth of Pennsylvania.

5. There are/were no administrative remedies or requirements that could be exhausted.

## PARTIES

6. Plaintiff, Jamie Hensley a/k/a Jayden Hensley ("Jayden"), is a female to male transgender individual; that is, although Jayden is biologically female, he identifies as a male.

2

7.  Jayden prefers the use of male pronouns, and therefore, will be referred to as "he" in this

    Complaint.

8.  Jayden is identified as a "male" in the identification card issued by the Pennsylvania

    Department of Transportation, and he lives as a "male".

9.  Jayden was diagnosed by a physician as suffering from gender identity disorder.

10. Jayden was prescribed testosterone as a form of treatment for his transition to male, and

    took said hormone for many years.

11. Jayden has not yet undergone any surgical modifications to complete his transition from

    female to male.

12. Defendant, Bucks County Correctional Facility a/k/a Bucks County and/or Bucks County

    Department of Corrections ("BCCF"), located at 1730 South Easton Road, Doylestown,

    Pennsylvania, 18901, is an adult detention center within the Bucks County Jail System,

    which by and though its agents, servants, workers, employees and/or other

    representatives, maintained, operated, controlled, staffed, and/or supervised the facility,

    and who acted through its agents, servants, workers, employees and other representatives

    to deny Jayden of his rights under the Constitution of the United States of America in

    violation of 42 U.S.C. §§ 1983, 1985 and/or 1988.

13. At all times relevant herein, Defendant, William F. Plantier, individually and in his

    official capacity as Director of BCCF, is and was at all times material and relevant

    hereto, responsible for the delivery and quality of the medical and behavioral health

    services provided to prisoners at BCCF, and was responsible for the safety and overall

    treatment of the prisoners housed at BCCF, and who failed to protect Jayden, failed to

    provide Jayden with proper medical care and/or acted with deliberate indifference to

3

Jayden's serious medical needs, failed to prevent Jayden from being the subject of sex discrimination and failed to protect Jayden from retaliation for engaging in protected activity, and who engaged in a plan with the other named Defendants and John Doe Defendants to deprive Jayden of his rights under the Constitution of the United States of America in violation of 42 U.S.C. §§ 1983, 1985 and/or 1988.

14.     At all times relevant herein, Defendant, Terrance P. Moore, individually and in his official capacity as Warden of BCCF (the "Warden"), is and was at all times material and relevant hereto, responsible for the delivery and quality of the medical and behavioral health services provided to prisoners at BCCF, and was responsible for the safety and overall treatment of the prisoners housed at BCCF, and who failed to protect Jayden, failed to provide Jayden with proper medical care and/or acted with deliberate indifference to Jayden's serious medical needs, failed to prevent Jayden from being the subject of sex discrimination and failed to protect Jayden from retaliation for engaging in protected activity, and who engaged in a plan with the other named Defendants and John Doe Defendants to deprive Jayden of his rights under the Constitution of the United States of America in violation of 42 U.S.C. §§ 1983, 1985 and/or 1988.

15.     At all times relevant herein, Defendant, Sergeant Gregory Vingless ("Vingless"), individually and in his official capacity as an employee of BCCF, is and was at all times material and relevant hereto, responsible for the delivery and quality of the medical and behavioral health services provided to prisoners at BCCF, and was responsible for the safety and overall treatment of the prisoners housed at BCCF, and who failed to protect Jayden, failed to provide Jayden with proper medical care and/or acted with deliberate indifference to Jayden's serious medical needs, failed to prevent Jayden from being the

subject of sex discrimination and failed to protect Jayden from retaliation for engaging in protected activity, and who engaged in a plan with the other named Defendants and John Doe Defendants to deprive Jayden of his rights under the Constitution of the United States of America in violation of 42 U.S.C. §§ 1983, 1985 and/or 1988.

16.    At all times relevant herein, Defendant, Officer Polomolus ("Polomolus"), individually and in his official capacity as an employee of BCCF, is and was at all times material and relevant hereto, responsible for the delivery and quality of the medical and behavioral health services provided to prisoners at BCCF, and was responsible for the safety and overall treatment of the prisoners housed at BCCF, and who failed to protect Jayden, failed to provide Jayden with proper medical care and/or acted with deliberate indifference to Jayden's serious medical needs, failed to prevent Jayden from being the subject of sex discrimination and failed to protect Jayden from retaliation for engaging in protected activity, and who engaged in a plan with the other named Defendants and John Doe Defendants to deprive Jayden of his rights under the Constitution of the United States of America in violation of 42 U.S.C. §§ 1983, 1985 and/or 1988.

17.    At all times relevant herein, Defendant, Officer Willis ("Willis"), individually and in her official capacity as an employee of BCCF, is and was at all times material and relevant hereto, responsible for the delivery and quality of the medical and behavioral health services provided to prisoners at BCCF, and was responsible for the safety and overall treatment of the prisoners housed at BCCF, and who failed to protect Jayden, failed to provide Jayden with proper medical care and/or acted with deliberate indifference to Jayden's serious medical needs, failed to prevent Jayden from being the subject of sex discrimination and failed to protect Jayden from retaliation for engaging in protected

activity, and who engaged in a plan with the other named Defendants and John Doe Defendants to deprive Jayden of his rights under the Constitution of the United States of America in violation of 42 U.S.C. §§ 1983, 1985 and/or 1988.

18.    At all times relevant herein, Defendant, Officer Gill ("Gill"), individually and in her official capacity as an employee of BCCF, is and was at all times material and relevant hereto, responsible for the delivery and quality of the medical and behavioral health services provided to prisoners at BCCF, and was responsible for the safety and overall treatment of the prisoners housed at BCCF, and who failed to protect Jayden, failed to provide Jayden with proper medical care and/or acted with deliberate indifference to Jayden's serious medical needs, failed to prevent Jayden from being the subject of sex discrimination and failed to protect Jayden from retaliation for engaging in protected activity, and who engaged in a plan with the other named Defendants and John Doe Defendants to deprive Jayden of his rights under the Constitution of the United States of America in violation of 42 U.S.C. §§ 1983, 1985 and/or 1988.

19.    At all times relevant herein, Defendant, Officer Barats ("Barats"), individually and in his official capacity as an employee of BCCF, is and was at all times material and relevant hereto, responsible for the delivery and quality of the medical and behavioral health services provided to prisoners at BCCF, and was responsible for the safety and overall treatment of the prisoners housed at BCCF, and who failed to protect Jayden, failed to provide Jayden with proper medical care and/or acted with deliberate indifference to Jayden's serious medical needs, failed to prevent Jayden from being the subject of sex discrimination and failed to protect Jayden from retaliation for engaging in protected activity, and who engaged in a plan with the other named Defendants and John Doe

Defendants to deprive Jayden of his rights under the Constitution of the United States of America in violation of 42 U.S.C. §§ 1983, 1985 and/or 1988.

20.    At all times relevant herein, Defendant, Officer T. Davis ("Davis"), individually and in his official capacity as an employee of BCCF, is and was at all times material and relevant hereto, responsible for the delivery and quality of the medical and behavioral health services provided to prisoners at BCCF, and was responsible for the safety and overall treatment of the prisoners housed at BCCF, and who failed to protect Jayden, failed to provide Jayden with proper medical care and/or acted with deliberate indifference to Jayden's serious medical needs, failed to prevent Jayden from being the subject of sex discrimination and failed to protect Jayden from retaliation for engaging in protected activity, and who engaged in a plan with the other named Defendants and John Doe Defendants to deprive Jayden of his rights under the Constitution of the United States of America in violation of 42 U.S.C. §§ 1983, 1985 and/or 1988.

21.    At all times relevant herein, Defendant, Lillian Budd, ("Budd"), individually and in her official capacity as an employee of BCCF, who was employed as the Assistant Warden, and who is and was at all times material and relevant hereto, responsible for the delivery and quality of the medical and behavioral health services provided to prisoners at BCCF, and was responsible for the safety and overall treatment of the prisoners housed at BCCF, and who failed to protect Jayden, failed to provide Jayden with proper medical care and/or acted with deliberate indifference to Jayden's serious medical needs, failed to prevent Jayden from being the subject of sex discrimination and failed to protect Jayden from retaliation for engaging in protected activity, and who engaged in a plan with the other named Defendants and John Doe Defendants to deprive Jayden of his rights under

the Constitution of the United States of America in violation of 42 U.S.C. §§ 1983, 1985 and/or 1988.

22.  At all times relevant herein, Defendant, Chief Investigator, Frank Bochenek ("Bochenek"), individually and in his official capacity as an employee of BCCF, is and was at all times material and relevant hereto, responsible for the delivery and quality of the medical and behavioral health services provided to prisoners at BCCF, and was responsible for the safety and overall treatment of the prisoners housed at BCCF, and who failed to protect Jayden, failed to provide Jayden with proper medical care and/or acted with deliberate indifference to Jayden's serious medical needs, failed to prevent Jayden from being the subject of sex discrimination and failed to protect Jayden from retaliation for engaging in protected activity, and who engaged in a plan with the other named Defendants and John Doe Defendants to deprive Jayden of his rights under the Constitution of the United States of America in violation of 42 U.S.C. §§ 1983, 1985 and/or 1988.

23.  At all times relevant herein, Defendant, Captain "J" ("Capt. J"), individually and in his official capacity as an employee of BCCF, is and was at all times material and relevant hereto, responsible for the delivery and quality of the medical and behavioral health services provided to prisoners at BCCF, and was responsible for the safety and overall treatment of the prisoners housed at BCCF, and who failed to protect Jayden, failed to provide Jayden with proper medical care and/or acted with deliberate indifference to Jayden's serious medical needs, failed to prevent Jayden from being the subject of sex discrimination and failed to protect Jayden from retaliation for engaging in protected activity, and who engaged in a plan with the other named Defendants and John Doe

Defendants to deprive Jayden of his rights under the Constitution of the United States of America in violation of 42 U.S.C. §§ 1983, 1985 and/or 1988.

24.     At all times relevant herein, Defendant, Officer Santago ("Santago"), individually and in his official capacity as an employee of BCCF, is and was at all times material and relevant hereto, responsible for the delivery and quality of the medical and behavioral health services provided to prisoners at BCCF, and was responsible for the safety and overall treatment of the prisoners housed at BCCF, and who failed to protect Jayden, failed to provide Jayden with proper medical care and/or acted with deliberate indifference to Jayden's serious medical needs, failed to prevent Jayden from being the subject of sex discrimination and failed to protect Jayden from retaliation for engaging in protected activity, and who engaged in a plan with the other named Defendants and John Doe Defendants to deprive Jayden of his rights under the Constitution of the United States of America in violation of 42 U.S.C. §§ 1983, 1985 and/or 1988.

25.     At all times relevant herein, Defendant, Captain Landis ("Landis"), individually and in his official capacity as an employee of BCCF, is and was at all times material and relevant hereto, responsible for the delivery and quality of the medical and behavioral health services provided to prisoners at BCCF, and was responsible for the safety and overall treatment of the prisoners housed at BCCF, and who failed to protect Jayden, failed to provide Jayden with proper medical care and/or acted with deliberate indifference to Jayden's serious medical needs, failed to prevent Jayden from being the subject of sex discrimination and failed to protect Jayden from retaliation for engaging in protected activity, and who engaged in a plan with the other named Defendants and John

Doe Defendants to deprive Jayden of his rights under the Constitution of the United

States of America in violation of 42 U.S.C. §§ 1983, 1985 and/or 1988.

26.     At all times relevant herein, Defendant, Officer DiPasquo ("DiPasquo"), individually and

in his official capacity as an employee of BCCF, is and was at all times material and

relevant hereto, responsible for the delivery and quality of the medical and behavioral

health services provided to prisoners at BCCF, and was responsible for the safety and

overall treatment of the prisoners housed at BCCF, and who failed to protect Jayden,

failed to provide Jayden with proper medical care and/or acted with deliberate

indifference to Jayden's serious medical needs, failed to prevent Jayden from being the

subject of sex discrimination and failed to protect Jayden from retaliation for engaging in

protected activity, and who engaged in a plan with the other named Defendants and John

Doe Defendants to deprive Jayden of his rights under the Constitution of the United

States of America in violation of 42 U.S.C. §§ 1983, 1985 and/or 1988.

27.     At all times relevant herein, Defendants, John Does 1-50, whose names are not yet

known, were the prison commanders, supervisors, officers, staff, physicians,

psychologists, nurses, nurse practitioners, medical assistants, and/or other medical and/or

professional individuals, practices and/or personnel in charge of approving, selecting

and/or implementing the prison and medical services to be provided to Jayden at BCCF,

and who failed to provide the appropriate medical treatment and/or who were deliberately

indifferent to the serious medical needs of Jayden, and/or who participated in a plan or

scheme and acted in concert with others to deprive Jayden of his rights under the

Constitution of the United States, and/or who retaliated against Jayden for engaging in

protected conduct, and/or any other representatives, agents, servants and or employees

acting on behalf of BCCF who maintained, operated, controlled, staffed, supervised BCCF, and/or provided services or should have provided services to Jayden who as a result of their acts and/or omissions violated 42 U.S.C. §§ 1983, 1985 and/or 1988.

28. At all times relevant herein, BCCF is liable for the acts of the named Defendants and the John Doe Defendants.

29. At all times relevant herein, all Defendants were acting under color of State law.

## BACKGROUND FACTS

30. Based on a technical violation of parole, due to the failure to pay restitution, Jayden was confined to the BCCF beginning on or about November 18, 2013.

31. Jayden was housed within the female population at BCCF.

32. Jayden advised the officer at the time he was processed into BCCF that he was transgender and had been diagnosed by a medical professional as suffering from gender identity disorder.

33. On the day after Jayden became incarcerated at BCCF, he was seen by the mental health workers at BCCF, at which time Jayden told the mental health workers that he was transgender, had been diagnosed as suffering from gender identity disorder, had previously been on hormone replacement therapy ("HRT"), and requested that his hormone therapy, i.e., testosterone, be continued while he was incarcerated at BCCF.

34. Jayden was advised that if he could provide medical records showing the need for hormones, he would be given same.

35. While awaiting his medical records, it became known to Jayden that certain officers of BCCF had told the other inmates that Jayden was "transitioning," which caused natural curiosity, and subjected Jayden to constant daily questioning about his body.

36. Jayden answered other inmate's question about his transgender status so long as the questions were respectful.

37. On December 8, 2013, Jayden requested information concerning a prior request he had made to be part of the work release program, and on December 20, 2013, Jayden received a Certificate of Achievement for successfully completing the Release and ReEntry Planning Program.

38. Jayden could not actually begin the work release program until certain paperwork was received, and once approved for the program, Jayden would have to secure employment before actually beginning the program.

39. On or about December 29, 2013, while lying in the top bunk in his room, facing the wall, during a lock down, Jayden heard the door to his room unlock.

40. Room doors can only be unlocked by an officer/employee of BCCF.

41. Upon hearing the door unlock, Jayden rolled over to look at the unlocked door, and saw that two inmates, "Blythestone" and "Weeks," had entered his room and were blocking the door.

42. Blythestone and Weeks stated to Jayden, "we want to see your 'penis,'[1] and Polomolus is curious too."

43. Upon Information and belief, Polomolus, unlocked the door to Jayden's cell to permit the Blythestone and Weeks to enter into the cell for the purpose of sexually assaulting Jayden.

---

[1] Females by birth who take testosterone to transition to male often see an increase in the size of their clitoris, which is then referred to as a "penis".

44. Jayden asked the two inmates to leave his cell, but they refused and continued to taunt Jayden, demanding to see his "penis."

45. After approximately five minutes of being trapped in the small cell with his two attackers, who were in very close proximity to Jayden and were blocking the only means of egress, Jayden being anxious, uncomfortable, and fearful, pulled his shorts down so that the two inmates would leave without harming him.

46. As a result, Jayden was humiliated and suffered extreme anxiety and stress.

47. Jayden had never shown his genitals to anyone at BCCF prior to that incident, and in fact, took care to shower at 5:00 a.m. to avoid anyone seeing him when he was undressed.

48. Upon Jayden pulling down his shorts, Blythestone and Weeks began laughing and left the room causing the door to lock again.

49. Jayden watched the two inmates approach Polomolus after leaving the room, and witnessed a conversation between Blythestone, Weeks, and Polomolus wherein Polomolus began to laugh.

50. During the time that Jayden was incarcerated at BCCF, Polomolus routinely called Jayden "Miss Hensley", while only calling the other inmates by their last name without using "Miss."

51. Polomolus also routinely told Jayden "you are on a female block – you are female," or used other words meant to cause anguish to Jayden who was and is a transgender female to male.

52. Because Jayden felt that Polomolus had already routinely singled him out for discrimination based on his non-conformity to sex stereotypes, and because Jayden believed that Polomolus participated in and was part of the plan to permit Blythestone

and Weeks to sexually assault him, Jayden waited for a shift change to report the

incident.

53.     On December 29, 2013, Jayden completed a "Green Slip", which is the form used by

inmates to report problems and to request action or information, which was addressed to

Vingless and Captain J, relating to the sexual assault that had occurred earlier that day.

54.     The December 29, 2013 Green Slip states:

> I was in my room before 12:30 p.m. lock down two inmates
> Melissa Blythestone and Weeks came into my room asking about
> my sexual organs & were badgering me to show them.  I waited til
> 2nd shift to tell the officer cause these inmates claimed Ofc
> Polomolus also was curious.  My roommate was also in our room.
> Our door was locked so an officer had to pop our door for those
> inmates to get in our room.  Now I feel very uncomfortable.

55.     Upon information and belief, as a result of Jayden's complaints, Blythestone and Weeks

were sent to solitary confinement ("the hole") for two (2) days.

56.     On December 30, 2013, Jayden was confronted by two friends of Blythestone and

Weeks, "Cancro" and "Chell," who threatened Jayden for "ratting" Blythestone and

Weeks; Jayden was specifically told that he "would be set up" to get into trouble on

work release by inmates in the work release program.

57.     Jayden filled out a green slip concerning the threat made by Cancro and Chell.

58.     On that same day, Jayden entered the work release program, and on January 8, 2014 was

told that his paperwork for work release had come back allowing him to look for a job.

59.     In or about this same time, Jayden's medical records and testosterone were received by

BCCF.

60.   When Jayden presented to the infirmary at BCCF to receive his HRT, the doctor waited

for the nurse to leave the room and told Jayden that she (the doctor) had been threatened

by BCCF - "if I give you the hormones I will be fired."

61.   Jayden began lodging complaints about the lack of HRT.

62.   On January 15, 2014, a Misconduct Report, completed by Bochenek, was issued relating

to Jayden wherein it was alleged that he sexually assaulted another inmate, which inmate

happened to be a friend of Blythestone, Weeks, Cancro and Chell.

63.   Without any investigation, Jayden was sent to the hole for forty (40) days.

64.   On January 17, 2014, in his appeal to the Warden of the foregoing punishment Jayden

submitted a written statement about the disparate treatment he was receiving, and

complained that he "did not feel safe."

65.   While in the hole, Jayden was only permitted to shower three times per week in a small

closet, and was not given any time outside allegedly because of inclement weather.

66.   During his time in the hole, Jayden was not given any testosterone.

67.   While in the hole, Jayden became depressed and attempted suicide with the string from

his sweatpants.

68.   Jayden then remained in the hole, because BCCF does not have a separate space for

inmates on "suicide watch."

69.   By March 2014, Jayden was let out of the hole for a brief period of time, during which he

complained in writing, on multiple occasions, of his need for HRT.

70.   Specifically, Jayden complained in writing to Budd about the lack of HRT on March 12,

2014, stating that he was being subjected to discrimination based on his "gender issues,"

and Jayden also complained on that day that he was being subjected to cruel and unusual

punishment.

71.    On March 18, 2014, Jayden again requested HRT, and advised that he was experiencing

moodiness, periods and undue mental stress.

72.    The Medical Department responded, "Jamie, we do not give hormone replacement

therapy here.  Sorry."

73.    Jayden responded to BCCF's statement that it does not provide hormone therapy:

> It could be arranged.  This is so important to me because I have
> fought so hard to get on hormones.  I've lost my family and all and
> now I am starting to get depressed and feel like I am about to lose
> my mind.  I didn't have thoughts of hurting or killing myself while
> on HRT.  I could be assured when I made decisions they were
> rational ones.  I feel less grounded and like I am out of place.

74.    In response to his written complaint of lack of adequate medical care, Jayden was

referred to a doctor for depression.

75.    Later, on that same day, March 18, 2014, Jayden was falsely accused by Davis of

inappropriately touching another inmate, and was denied the ability to defend himself

against the false allegations, resulting in him being sent to the hole for ten (10) days.

76.    On March 19, 2014, Jayden complained, in writing:

> Are you aware that to deprive me of my hormone replacement
> therapy may result in psychological issues to resurface – which is
> happening – along with serious complications such as high blood
> pressure muscle wasting & neurological problems.  These
> hormones are medically needed for me and to deprive me of them
> serves no penological [sic.] purpose & amounts to torture.

77.    In response to the foregoing, the Medical Administrator stated, "we do not give hormone

therapy here."

78.   On March 23, 2014, Jayden complained again, in writing, to the Warden, "I am tired of my rights being violated."

79.   By the end of March 2014, and in direct retaliation for the numerous complaints Jayden made about what he perceived to be a violation of his rights under the Constitution of the United States of America, BCCF, and specifically, DiPasquo, took away evidence Jayden had accumulated in preparation of filing the instant lawsuit, which is a violation of his First Amendment Rights under the Constitution of the United States of America.

80.   Jayden complained, in writing, to Vingless of the aforesaid violation on March 30, 2014.

81.   During the same room search that resulted in BCCF taking away materials necessary for Jayde to access the Courts, BCCF staff found a story Jayden had written as part of his therapy prior to becoming incarcerated at BCCF.

82.   When the BCCF staff read the story, they called Jayden "sick and demented."

83.   Jayden was forced to spend another nine (9) days in the hole because of the story he wrote.

84.   The story was later published in a newspaper as an inspirational piece for the transgender community.

85.   Just days after making his March 30, 3014 written complaint, Jayden was again retaliated against when unfounded charges of sexual misconduct were levied against him by Davis.

86.   Jayden responded to the false charges in writing, stating:

> because people don't understand my lifestyle I am being harassed
> by both staff and inmates.  I have the right to be treated as a human
> being and that has not happened the whole time I have been here.

87.   Shortly thereafter, on April 14, 2014, Jayden was again sent to the hole for ten (10) days.

88.   On April 22, 2014, Jayden requested to speak with Warden, which request was denied.

89.  On April 28, 2014, Jayden received a memorandum from Director Plantier stating that Jayden's appeal of a grievance relating to his gender claims was reviewed and that the appeal was being sent to "medical staff."

90.  Jayden was issued a "binder" that kept his breasts minimized, which required a "green tag" when laundered so that the binder would be returned to Jayden.

91.  When Jayden gave the binder with a green tag to Willis, Willis stated, "It needs its binder washed.  I don't know why we need to do that."

92.  Officer Willis also told Jayden, "you are just a girl that wants to be a boy," and "you are just confused."

93.  Willis routinely singled out Jayden for discrimination based on his non-conformity to sex stereotypes, and used words meant to cause anguish to Jayden who was and is a transgender female to male.

94.  By way of example only, and in addition to the comments set forth above, Willis also told Jayden that he was a "predator," a "pedophile," a "whale," and a "blimp," and such comments were made consistently through Jayden's incarceration.

95.  In addition, during the time that Jayden was incarcerated at BCCF, Santago routinely called Jayden "Miss Hensley", while only calling the other inmates by their last name without using "Miss."

96.  Santago routinely singled out Jayden for discrimination based on his non-conformity to sex stereotypes, and used words meant to cause anguish to Jayden who was and is a transgender female to male.

97.  On May 18, 2014, Jayden requested a new binder for his chest because his was broken; BCCF responded, "we do not issue chest binders."

98. The chest binder was essential for Jayden's health and Defendants were deliberately indifferent to those needs.

99. On May 19, 2014, in direct retaliation for his protected conduct, Jayden was once again written up, this time by Barats for alleged contraband.

100. By Memorial Day 2014, without his testosterone and binder, and in light of the discriminatory comments and intentional abuse inflicted upon Jayden due to his non-conformity with sex stereotypes, Jayden became depressed and made a second suicide attempt wherein he attempted to drink cleaning chemicals.

101. Jayden was once again confined to the hole.

102. In August 2014, Jayden was placed with an elderly woman as a roommate who falsely accused Jayden of assaulting her.

103. The older inmate was reprimanded for lying, but in the meantime, Jayden was placed back in the hole.

104. Thereafter, Jayden was told that he would not have any other roommates so as to avoid anyone falsely accusing him of assault.

105. When Jayden was removed from the hole and was being taken to a new room, he discovered that he was being placed with a roommate; therefore, Jayden said to the guard, "I'm suicidal put me on suicide watch."

106. The guard, Gill, told Jayden, "don't talk about it, be about it."

107. In response to Gill's directive, Jayden tied a sheet around his neck and attempted to jump off the second floor landing.

108. Jayden was placed back in the hole.

109.    While Jayden was in the hole, BCCF removed the pages of their handbook that dealt with

transgender issues to prevent Jayden from researching his legal claims.

110.    Jayden made multiple written complaints to Landis about the unlawful conduct he had

been subjected to based on his non-conformity to sexual stereotypes and the retaliation he

had suffered as a result of voicing complaints of unlawful conduct.

111.    The complaints to Landis fell on deaf ears.

112.    There are other green slips not specifically referenced in this Complaint because Jayden

no longer has access to those Green Slips; each Green Slip represents protected conduct,

as each slip makes complaints of discrimination and violations of Civil Rights under the

Constitution of the United States of America.

113.     Jayden was released from BCCF in or about October 2014.

114.    During the time that Jayden was incarcerated at BCCF, he spent more than six (6) months

in the hole.

115.    Jayden was denied medical treatment.

116.    Jayden was sexually assaulted.

117.    Jayden was targeted for unlawful treatment because of his non-conformity with sex

stereotypes.

118.    Jayden was subjected to retaliation based, at least in part, on his protected conduct.

### COUNT 1
### VIOLATION OF CIVIL RIGHTS PURSUANT TO TITLE 42 U.S.C. § 1983
### (8th and 14th Amendment – Right to Medical Treatment)

119.    Jayden incorporates the preceding paragraphs as though set forth at full herein.

120.    In committing the acts complained of herein, Defendants, Bucks County Correctional

Facility, a/k/a Bucks County and/or Bucks County Department Of Corrections, William

F. Plantier, Terrance P. Moore, Sgt. Gregory Vingless, Officer Polomolus, Officer T. Davis, Officer Willis, Officer Gill, Officer Barats, Lillian Budd, Frank Bochenek, Caption "J", Officer Santago, Captain Landis, Officer DiPasquo, and John Does 1-50 acted under color of State law to deprive Jayden of his constitutionally protected rights under the Eighth and Fourteenth Amendments to the Constitution of the United States of America, which rights include, but are not limited to:

a.   The right to not be deprived of life or liberty without due process of law; and

b.   The right to be provided proper and adequate medical attention and care free from deliberate disregard of medical care by persons acting under color of State law.

121.   Defendants, by and through their agents, servants, workers, employees and/or other representatives, detained Jayden, deprived Jayden of life and liberty without due process of law, and employed cruel and unusual punishment by depriving Jayden of adequate medical care while acting under color of State law, all in violation of his rights under the Eighth and Fourteenth Amendments of the Constitution of the United States.

122.   Defendants knew, or should have known, that Jayden suffered from a serious medical condition, and refused to provide medical treatment for his serious medical condition, or in the alternative, were deliberately indifferent to Jayden's serious medical needs.

123.   Being transgender constitutes a serious medical need.

124.   There was no medical reason to delay or refuse treatment.

125.   Denial of treatment was based on a non-medical reason.

126.   Jayden needlessly suffered as a result of the denial of simple medical care.

127.   The denial of Jayden's treatment did not serve any penological purpose.

128. As a direct and proximate result of the acts, conduct, and omissions of the Defendants, by and through their agents, servants, workers, employees and/or other representatives, Jayden was caused to suffer damages and injuries, including extended pain and suffering.

129. As a direct and proximate result of the negligence, recklessness, carelessness, wrongful, illegal and unconstitutional acts and omissions of the Defendants, Jayden was caused to suffer damages and injuries, including extended pain and suffering.

130. The acts and/or omissions of Defendants, by and through their agents, servants, workers, employees and/or other representatives, were committed negligently, recklessly, carelessly, with gross negligence, willfully, wantonly, maliciously, intentionally, unlawfully and unconstitutionally and by conduct so egregious as to the shock the conscience and all sense of decency.

**WHEREFORE**, Plaintiff, Jamie ("Jayden") Hensley, asks this Court to:

a. Enter judgment against all Defendants, jointly, severally and in the alternative, and in favor of Plaintiff;

b. Award Plaintiff compensatory damages, both pecuniary and non-pecuniary, including for his pain, suffering and severe emotional distress, and loss of enjoyment of life;

c. Award Plaintiff damages for the constitutional violation of the rights of Plaintiff pursuant to 42 U.S.C. § 1983.

d. Award Plaintiff punitive damages for the outrageous and recklessly indifferent conduct of Defendants; and

e. Award Plaintiff his costs and disbursements associated with the filing and maintenance of this action, including an award of reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

**COUNT 2**
**VIOLATION OF CIVIL RIGHTS PURSUANT TO TITLE 42 U.S.C. § 1983**
**Failure to Implement and/or Enforce Appropriate Policies, Customs and Practices**

131.   Jayden incorporates the preceding paragraphs as though set forth at full herein.

132.   Jayden believes and therefore avers that Defendants, Bucks County Correctional Facility,

a/k/a Bucks County and/or Bucks County Department Of Corrections, William F.

Plantier, Terrance P. Moore, Sgt. Gregory Vingless, Officer Polomolus, Officer T. Davis,

Officer Willis, Officer Gill, Officer Barats, Lillian Budd, Frank Bochenek, Caption "J",

Officer Santago, Captain Landis, Officer DiPasquo, and John Does 1-50, acting within

the course and scope of their employment, under color of State law, adopted and

maintained for many years a recognized and accepted policy, custom, and practice of

condoning and/or acquiescing in, the deprivation of adequate medical care, and

subjecting persons to the same type of treatment to which Jayden was subjected, which

policy constitutes unlawful deprivation of due process of law and deprivation of adequate

medical care, all of which violates the rights of Jayden including, but not limited to, the

Eight Amendment and Fourteenth Amendments of the Constitution of the United States

of America and is in violation of 42 U.S.C. § 1983.

133.   Jayden believes, and therefore avers, that Defendants, Bucks County Correctional

Facility, a/k/a Bucks County and/or Bucks County Department Of Corrections, William

F. Plantier, Terrance P. Moore, Sgt. Gregory Vingless, Officer Polomolus, Officer T.

Davis, Officer Willis, Officer Gill, Officer Barats, Lillian Budd, Frank Bochenek,

Caption "J", Officer Santago, Captain Landis, Officer DiPasquo, and John Does 1-50,

adopted and maintained for many years, a recognized and accepted policy, custom and/or

practice of systemically failing to properly train, supervise and/or discipline its medical

staff and personnel, and its prison staff and personnel, regarding the serious medical

needs of those suffering with gender identity disorder, as well as need to treat all inmates

the same regardless of any non-conformity with traditional stereotypical sex stereotypes,

which policy(ies) violate(s) the rights of Jayden, including, but not limited to, the Eighth

and Fourteenth Amendments of the Constitution of the United States of America, and

which is in violation of 42 U.S.C. § 1983.

134.    Jayden believes, and therefore avers, that Defendants, Bucks County Correctional

Facility, a/k/a Bucks County and/or Bucks County Department Of Corrections, William

F. Plantier, Terrance P. Moore, Sgt. Gregory Vingless, Officer Polomolus, Officer T.

Davis, Officer Willis, Officer Gill, Officer Barats, Lillian Budd, Frank Bochenek,

Caption "J", Officer Santago, Captain Landis, Officer DiPasquo, and John Does 1-50

have been deliberately indifferent to the rights of citizens of the Commonwealth of

Pennsylvania, and specifically of Bucks County, including but not limited to incarcerated

persons, to be free from the deprivation of life and/or liberty without due process of law,

and to receive adequate medical care while incarcerated, all of which deliberate

indifference violates the rights of Jayden including but not limited to the Eighth and

Fourteenth Amendments of the Constitution of the United States of America and is in

violation of 42 U.S.C. §1983.

135.    Jayden believes, and therefore avers, that Defendants, Bucks County Correctional

Facility, a/k/a Bucks County and/or Bucks County Department Of Corrections, William

F. Plantier, Terrance P. Moore, Sgt. Gregory Vingless, Officer Polomolus, Officer T.

Davis, Officer Willis, Officer Gill, Officer Barats, Lillian Budd, Frank Bochenek,

Caption "J", Officer Santago, Captain Landis, Officer DiPasquo, and John Does 1-50,

knew or should have known of the above described policy(ies), practice(s) and/or

custom(s) of BCCF, and that they deliberately, knowingly, and recklessly failed to take

measures to stop or limit the policy, including, inter alia, by providing proper training,

supervision, discipline, and control of its medical staff/personnel, agents, and/or prison

employees of the BCCF and the above-named Defendants.

136.    Jayden believes, and therefore avers, that Defendants, Bucks County Correctional

Facility, a/k/a Bucks County and/or Bucks County Department Of Corrections, William

F. Plantier, Terrance P. Moore, Sgt. Gregory Vingless, Officer Polomolus, Officer T.

Davis, Officer Willis, Officer Gill, Officer Barats, Lillian Budd, Frank Bochenek,

Caption "J", Officer Santago, Captain Landis, Officer DiPasquo, and John Does 1-50,

adopted and maintained for many years a recognized and accepted policy, custom and/or

practice of failing to properly investigate matters in which medical staff/personnel and/or

prison guards failed, ignored and/or refused to provide adequate medical care to its

inmates and deprived such individuals of life and/or liberty without due process of law,

which allowed for and resulted in an encouragement to its medical staff/personnel and

prison guards within the Bucks County Prison System to continue doing same, and

creates policies, practices and/or customs allowing its medical staff/personnel and prison

guards to proceed in this manner and create an atmosphere for the allowance of such

without fear of punishment.

137.    By failing to take action to stop or limit the policy and/or by remaining deliberately

indifferent to the systematic abuses which occurred in accordance with and as a direct

and proximate result of the above policy, custom and/or practice, Defendants, Bucks

County Correctional Facility, a/k/a Bucks County and/or Bucks County Department Of

Corrections, William F. Plantier, Terrance P. Moore, Sgt. Gregory Vingless, Officer

Polomolus, Officer T. Davis, Officer Willis, Officer Gill, Officer Barats, Lillian Budd,

Frank Bochenek, Caption "J", Officer Santago, Captain Landis, Officer DiPasquo, and

John Does 1-50, condoned, acquiesced in, participated in and perpetrated the policy,

custom and/or practice in violation of the rights of Jayden, including, but not limited to,

the Eighth and Fourteenth Amendments of the Constitution of the United States of

America, and was in violation of 42 U.S.C. § 1983.

138.    As a direct and proximate result of the malicious, intentional, and/or reckless actions of

the Defendants, Bucks County Correctional Facility, a/k/a Bucks County and/or Bucks

County Department Of Corrections, William F. Plantier, Terrance P. Moore, Sgt.

Gregory Vingless, Officer Polomolus, Officer T. Davis, Officer Willis, Officer Gill,

Officer Barats, Lillian Budd, Frank Bochenek, Caption "J", Officer Santago, Captain

Landis, Officer DiPasquo, and John Does 1-50, Jayden suffered injuries which are

described above.

**WHEREFORE,** Plaintiff, Jamie ("Jayden") Hensley, asks this Court to:

a.   Enter judgment against all Defendants, jointly, severally and in the alternative, and in

favor of Plaintiff;

b.   Award Plaintiff compensatory damages, both pecuniary and non-pecuniary, including

for his pain, suffering and severe emotional distress, and loss of enjoyment of life;

c.   Award Plaintiff damages for the constitutional violation of the rights of Plaintiff

pursuant to 42 U.S.C. § 1983.

d.   Award Plaintiff punitive damages for the outrageous and recklessly indifferent

conduct of Defendants; and

e.   Award Plaintiff his costs and disbursements associated with the filing and

maintenance of this action, including an award of reasonable attorney's fees pursuant

to 42 U.S.C. § 1988.

### COUNT 3
### VIOLATION OF CIVIL RIGHTS PURSUANT TO TITLE 42 U.S.C. § 1983
### 1st Amendment – Access to Courts

139.   Jayden incorporates the preceding paragraphs as though set forth at full herein.

140.   As a result of the foregoing, Jayden was deprived access to the courts, which is protected

under the First Amendment of the Constitution of the United States of America, and is a

violation of 42 U.S.C. § 1983.

141.   Defendants, Bucks County Correctional Facility, a/k/a Bucks County and/or Bucks

County Department Of Corrections, William F. Plantier, Terrance P. Moore, Sgt.

Gregory Vingless, Officer Polomolus, Officer T. Davis, Officer Willis, Officer Gill,

Officer Barats, Lillian Budd, Frank Bochenek, Caption "J", Officer Santago, Captain

Landis, Officer DiPasquo, and John Does 1-50, knew or should have known that by

removing pertinent sections of legal resources and by confiscating Jayden's research,

notes and evidence, that their conduct was unlawful, egregious, wanton, reckless,

malicious and in violation of Jayden's rights under the First Amendment of the

Constitution of the United States of America and was in violation of 42 U.S.C. § 1983.

142.   As a direct result of the Defendants conduct as afore-described, Jayden has suffered

pecuniary and non-pecuniary harm, undue emotional distress, pain and suffering.

**WHEREFORE**, Plaintiff, Jamie ("Jayden") Hensley, asks this Court to:

a.   Enter judgment against all Defendants, jointly, severally and in the alternative, and

in favor of Plaintiff;

b.    Award Plaintiff compensatory damages, both pecuniary and non-pecuniary, including for his pain, suffering and severe emotional distress, and loss of enjoyment of life;

c.    Award Plaintiff damages for the constitutional violation of the rights of Plaintiff pursuant to 42 U.S.C. § 1983.

d.    Award Plaintiff punitive damages for the outrageous and recklessly indifferent conduct of Defendants; and

e.    Award Plaintiff his costs and disbursements associated with the filing and maintenance of this action, including an award of reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

### COUNT 4
### VIOLATION OF CIVIL RIGHTS PURSUANT TO TITLE 42 U.S.C. § 1983
#### (14th Amendment – Equal Protection – Gender Norms)

143.   Jayden incorporates the preceding paragraphs as though set forth at full herein.

144.   As a result of the foregoing, Jayden was singled out for disparate treatment because of his sex – female.

145.   Specifically, Defendants, Bucks County Correctional Facility, a/k/a Bucks County and/or Bucks County Department Of Corrections, William F. Plantier, Terrance P. Moore, Sgt. Gregory Vingless, Officer Polomolus, Officer T. Davis, Officer Willis, Officer Gill, Officer Barats, Lillian Budd, Frank Bochenek, Caption "J", Officer Santago, Captain Landis, Officer DiPasquo, and John Does 1-50, purposefully discriminated against Jayden because he did not confirm to the stereotypical role of a female.

146.   Jayden displays male behaviors and male mannerisms.

147.   Jayden's appearance is that of male.

148.   Defendants' conduct was negligent, and/or intentional, willful, wanton, egregious, malicious and in violation of Jayden's rights under the Fourteenth Amendment to the Constitution of the United States, and was in violation of 42 U.S.C. § 1983.

149.   As a direct result of the Defendants conduct as afore-described, Jayden has suffered pecuniary and non-pecuniary harm, undue emotional distress, pain and suffering.

WHEREFORE, Plaintiff, Jamie ("Jayden") Hensley, asks this Court to:

a.   Enter judgment against all Defendants, jointly, severally and in the alternative, and in favor of Plaintiff;

b.   Award Plaintiff compensatory damages, both pecuniary and non-pecuniary, including for his pain, suffering and severe emotional distress, and loss of enjoyment of life;

c.   Award Plaintiff damages for the constitutional violation of the rights of Plaintiff pursuant to 42 U.S.C. § 1983.

d.   Award Plaintiff punitive damages for the outrageous and recklessly indifferent conduct of Defendants; and

e.   Award Plaintiff his costs and disbursements associated with the filing and maintenance of this action, including an award of reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

## COUNT 5
## VIOLATION OF CIVIL RIGHTS PURSUANT TO TILE 42 U.S.C. §1983
### Retaliation

150.   Jayden incorporates the preceding paragraphs as though set forth at full herein.

151. As a result of the foregoing, Jayden engaged in constitutionally protected conduct by, *inter alia*, filing grievances and lodging complaints about violations of his constitutional rights.

152. As a result of the foregoing, Defendants, Bucks County Correctional Facility, a/k/a Bucks County and/or Bucks County Department Of Corrections, William F. Plantier, Terrance P. Moore, Sgt. Gregory Vingless, Officer Polomolus, Officer T. Davis, Officer Willis, Officer Gill, Officer Barats, Lillian Budd, Frank Bochenek, Caption "J", Officer Santago, Captain Landis, Officer DiPasquo, and John Does 1-50, took adverse action against Jayden.

153. The aforesaid adverse action was motivated, at least in part by Jayden's protected conduct.

154. As a direct result of the Defendants conduct as afore-described, Jayden has suffered pecuniary and non-pecuniary harm, undue emotional distress, pain and suffering.

**WHEREFORE**, Plaintiff, Jamie ("Jayden") Hensley, asks this Court to:

a. Enter judgment against all Defendants, jointly, severally and in the alternative, and in favor of Plaintiff;

b. Award Plaintiff compensatory damages, both pecuniary and non-pecuniary, including for his pain, suffering and severe emotional distress, and loss of enjoyment of life;

c. Award Plaintiff damages for the constitutional violation of the rights of Plaintiff pursuant to 42 U.S.C. § 1983.

d. Award Plaintiff punitive damages for the outrageous and recklessly indifferent conduct of Defendants; and

e.   Award Plaintiff his costs and disbursements associated with the filing and

maintenance of this action, including an award of reasonable attorney's fees pursuant

to 42 U.S.C. § 1988.

## COUNT 6
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1985

155.   Jayden incorporates the preceding paragraphs as though set forth at full herein.

156.   As a result of the foregoing, Defendants, Bucks County Correctional Facility, a/k/a Bucks

County and/or Bucks County Department Of Corrections, William F. Plantier, Terrance

P. Moore, Sgt. Gregory Vingless, Officer Polomolus, Officer T. Davis, Officer Willis,

Officer Gill, Officer Barats, Lillian Budd, Frank Bochenek, Caption "J", Officer Santago,

Captain Landis, Officer DiPasquo, and John Does 1-50, conspired to deprive, either

directly or indirectly, Jayden of the equal protection of the laws, or of equal privileges

and immunities under the laws, or prevented or hindered the constituted authorities of the

Commonwealth of Pennsylvania or Bucks County from giving or securing to Jayden the

equal protection of the laws, which is a violation of Jayden's rights under 42 U.S.C. §

1985.

157.   Defendants' conduct was negligent, and/or intentional, willful, wanton, egregious,

malicious and in violation of Jayden's rights under the Fourteenth Amendment to the

Constitution of the United States, and was in violation of 42 U.S.C. § 1985.

158.   As a direct result of the Defendants conduct as afore-described, Jayden has suffered

pecuniary and non-pecuniary harm, undue emotional distress, pain and suffering.

**WHEREFORE**, Plaintiff, Jamie ("Jayden") Hensley, asks this Court to:

a.   Enter judgment against all Defendants, jointly, severally and in the alternative, and

in favor of Plaintiff;

b. Award Plaintiff compensatory damages, both pecuniary and non-pecuniary, including for his pain, suffering and severe emotional distress, and loss of enjoyment of life;

c. Award Plaintiff damages for the constitutional violation of the rights of Plaintiff pursuant to 42 U.S.C. § 1985.

d. Award Plaintiff punitive damages for the outrageous and recklessly indifferent conduct of Defendants; and

e. Award Plaintiff his costs and disbursements associated with the filing and maintenance of this action, including an award of reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

WEINTRAUB & MARONE, LLC

By: _____
LISA R MARONE

**JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

WEINTRAUB & MARONE, LLC

By: _____
LISA R MARONE

Dated: 12.17.15